<span style="color:red">**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000328
16-MAR-2020
07:59 AM**</span>

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

JW, Plaintiff-Appellant,
v.
RJ, Defendant-Appellee

NO. CAAP-19-0000328

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 07-1-3195)

MARCH 16, 2020

GINOZA, CHIEF JUDGE, CHAN AND HIRAOKA, JJ.

OPINION OF THE COURT BY HIRAOKA, J.

In this divorce case, Plaintiff-Appellant JW (**Mother**) appeals from two post-decree orders entered by the Family Court of the First Circuit:[1] (1) the **Decision and Order** entered on February 7, 2019; and (2) the **Reconsideration Order** entered on March 14, 2019. For the reasons explained below, we vacate paragraphs 3 ("Child Support") and 5 ("Post High School Education Expenses") of the Decision and Order and remand to the family court for further proceedings. That disposition moots Mother's procedural appeal from the Reconsideration Order, except that the paragraph in the Reconsideration Order dealing with the 529 accounts is vacated. The family court's "Supplemental Record on

---

[1] The Honorable Jessi L.K. Hall presided.

Appeal [Findings of Fact and Conclusions of Law]" entered on May 20, 2019, is vacated to the extent it is inconsistent with this opinion.

## I.     Procedural History

Mother and Defendant-Appellee RJ (**Father**) were married. They had three children, **NJ, LJ,** and **CJ** (collectively, the **Children**). Mother filed for divorce on October 3, 2007. A stipulated divorce decree was entered on October 26, 2007. Mother and Father agreed to joint legal custody of the Children. Mother had sole physical custody of the Children, subject to Father's rights of reasonable visitation.

On August 30, 2018, Father filed a motion for post-decree relief. By that time the oldest of the Children, NJ, was over the age of 18 and attending college in another state. Father sought to modify his child support obligations and college expense provisions in the divorce decree, among other things. On the latter issue, Father's motion stated:

> HIGHER EDUCATION EXPENSES
>
> 16.    Pursuant to the Decree, in the event an adult child of the parties is enrolled post high school on a full time basis at an accredited college or university, or in a vocational or trade school, [Mother] and [Father] shall each provide to said adult child as and for [their] educational support a sum to be determined each year.
>
> 17.    The higher education provision should be modified to state that should a child continue [their] education post high school on a full-time basis at an accredited college or university, or in a vocational or trade school, each parent shall each assume and pay one-half (1/2) of all post high school, higher education expenses, less any financial aid awarded to the child, until said child's graduation or attainment of the age of 23 years, whichever event shall first occur. The child shall reasonably explore and apply for financial aid for the higher education expenses whenever possible. Such financial aid may be in the form of scholarships, tuition waivers, grants, student loans, and the like. The child shall accept any and all financial aid including student loans awarded. Both parents shall fully cooperate and assist their child in the application process and provide appropriate documentation as may be required.

On October 1, 2018, Mother filed her own motion for post-decree relief. Mother sought relief on a number of issues, including child support obligations, Father's non-payment of his portion of the Children's extra-curricular, school-related, and

non-insurance medical expenses, and Father's non-payment of his portion of NJ's college expenses.

Both motions were heard by the family court on January 2, 2019. The parties had participated in mediation and had reached agreement on some of the issues. Counsel placed the agreements on the record, and a written stipulation was eventually filed. The family court scheduled an extended hearing for January 22, 2019, to deal with the outstanding issues.

Father and Mother each testified during the January 22, 2019 extended hearing, and the family court received a number of exhibits into evidence. The parties submitted written closing arguments. The family court entered the Decision and Order on February 7, 2019. Both parties filed motions for reconsideration or clarification. The family court entered the Reconsideration Order on March 14, 2019. Mother filed a notice of appeal on April 8, 2019. The family court filed its "Supplemental Record on Appeal [Findings of Fact and Conclusions of Law]" on May 20, 2019.[2] At issue in this appeal are the family court's calculation of Father's gross monthly income and resultant child support obligations, and the use of three 529 savings plan accounts[3] owned by Mother to pay the Children's higher education expenses.

## II.  **Standards of Review**

> [T]he family court possesses wide discretion in making its decisions and those decision[s] will not be set aside unless there is a manifest abuse of discretion. Thus, we will not

---

[2]     Hawai'i Family Court Rules (**HFCR**) Rule 52(a) (2015) provides, in relevant part:

> [U]pon notice of appeal filed with the court, the court shall enter its findings of fact and conclusions of law where none have been entered, unless the written decision of the court contains findings of fact and conclusions of law.

[3]     "A 529 Savings Plan gets its name from Section 529 of the Internal Revenue Code, which permits states to establish 'qualified tuition programs.'" Berens v. Berens, 818 S.E.2d 155, 157 (N.C. Ct. App. 2018) (citing 26 U.S.C. § 529). "All fifty states and the District of Columbia sponsor at least one type of 529 [savings] plan." In re Bourquignon, 416 B.R. 745, 749 (Bankr. D. Idaho 2009) (citation omitted). There is no requirement that a person participate in the plan sponsored by the state in which the person, or the plan beneficiary, resides. The record does not indicate which state — or states — sponsor the plans at issue in this case.

> disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (citation omitted).

The family court's findings of fact are reviewed under the "clearly erroneous" standard. Fisher, 111 Hawai'i at 46, 137 P.3d at 360. A finding of fact is clearly erroneous when the record lacks substantial evidence to support the finding, or despite substantial evidence in support of the finding, we are nonetheless left with a definite and firm conviction that a mistake has been made. Id. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. Id. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." Id. (citation omitted).

The family court's conclusions of law are ordinarily reviewed de novo, under the right/wrong standard, "and are freely reviewable for their correctness." Fisher, 111 Hawai'i at 46, 137 P.3d at 360. However, when a conclusion of law presents mixed questions of fact and law, we review it under the "clearly erroneous" standard because the court's conclusions are dependent on the facts and circumstances of each individual case. Estate of Klink ex rel. Klink v. State, 113 Hawai'i 332, 351, 152 P.3d 504, 523 (2007). A conclusion of law that is supported by the trial court's findings of fact and reflects an application of the correct rule of law will not be overturned. Id.

III. **Discussion**

    A.    **The family court did not make findings of fact that enable us to determine whether its calculation of Father's gross monthly income was supported by substantial evidence.**

Mother's first point of error is: "Whether the Family Court erred in its calculation of [Father]'s income for purposes

of child support and therefore erred in the amount of child support [Father] is obligated to pay."

The family court must utilize the current Hawai'i Child Support Guidelines **(Guidelines)** to set or modify child support orders unless exceptional circumstances warrant departure. PO v. JS, 139 Hawai'i 434, 442, 393 P.3d 986, 994 (2017). The Guidelines are promulgated by the Hawai'i family courts, contain substantive rules and principles relating to calculation of support, and include various appendices; Appendix A includes the "Child Support Guidelines Worksheet" **(CSG Worksheet)**, which is used to determine the initial calculation of a parent's monthly support obligation. Id. at 441-42, 393 P.3d at 993-94.

Father is self-employed. In the case of a self-employed parent, the family court should carefully scrutinize the reasonableness and appropriateness of business decisions that lessen the amount of income available for child support; a self-employed parent's business deductions should be carefully scrutinized to avoid the sheltering of income at the expense of lessening income available for child support. Doe v. Child Support Enf't Agency of Hawaii, 87 Hawai'i 178, 182, 953 P.2d 209, 213 (App. 1998). Tax returns alone do not always provide an accurate determination of a self-employed parent's income; it is the disposable income of the parent, and not their income tax returns alone, which must be considered by the family court. Id. It is necessary to examine the total financial situation of a self-employed parent, rather than to merely rely on tax returns for a determination of income. Id.

For a self-employed parent, the Guidelines (2014) provide, in relevant part:

III. OTHER CHILD SUPPORT CONSIDERATIONS

. . . .

E. SELF-EMPLOYED INDIVIDUALS

1. **SELF-EMPLOYED** individuals with gross incomes under $13,000 per month may calculate Monthly Net Income (Line 2) using either the automated version of the CSG WORKSHEET or the manual steps in §III.E.2. below. Self-employed individuals must report gross income minus

5

ordinary, necessary and <u>reasonable</u> business/operating expenses, and may include a <u>reasonable</u> amount for ordinary wear and tear of capital assets (calculated on a straight line basis over the useful life of the asset), minus one-half of self-employment taxes (refer to tax returns). The Court or [the Office of Child Support Hearings] may determine what (if any) depreciation may be subtracted.

2. **SELF-EMPLOYED INDIVIDUALS WITH INCOME OVER $13,000 PER MONTH** may calculate Monthly Net Income (Line 2) by using either the automated version of the CSG WORKSHEET (on gross income up to $999,999.00 per month) or by using the manual steps below. A worksheet for Self-Employed Individuals With Income Over $13,000 Per Month is attached as Appendix E.

a. <u>STEP ONE</u>

Add the gross monthly <u>earned</u> income from all sources

Deduct any <u>allowable ordinary and necessary</u> expenses (<u>see</u> §III.E.1.)

Calculate net self-employment income (gross less allowed expenses)

Multiply the net self-employment income by 92.35% (.9235) to calculate the amount subject to Self-Employment Tax

Calculate the self-employment tax on 92.35% of net self-employment income, 15.3% on net earned income up to $9,475 per month, and 2.9% on net earned income above that amount

b. <u>STEP TWO</u>

Use the net self-employment income as calculated above.

Add all other remaining <u>non-earned</u> income for Total Income Subject to Tax

Deduct ½ of the Self-Employment Tax

Calculate State and Federal Tax on the result using the applicable tables (<u>see</u> §III.D.2.(b)(c)).

c. <u>STEP THREE</u>

Use the Total Income Subject To Tax from Step 2

```
                        Subtract
                                Self-Employment Tax
                                State Income Tax
                                Federal Income Tax
                                Self-Support of $840 (after tax
                                poverty level self-support in
                                [Hawai'i])

                        The result is the Net Income for CSG
                        WORKSHEET.
```

Guidelines at 11, 16-17 (footnotes omitted) (some underscoring added).

Father referred to his income and expense statement and asset and debt statement, both filed on December 28, 2018, and to his 2017 federal and state tax returns, and argued for a finding that his gross income was $8,333.00 per month. Mother questioned the sources and amounts of Father's stated income and business/operating expenses, and argued for a finding that Father's gross monthly income was "anywhere from $22,994.33/mo. to $33,862.48/mo." The family court's Decision and Order stated, in relevant part:

> 3. _Child Support_. The Court determines . . . [Father]'s income for child support purposes to be $10,591.60.
>
> Pursuant to the attached Child Support Guidelines Worksheet, commencing February 1, 2019, [Father] shall pay [Mother] as and for the support, maintenance, and education of the parties' minor children the sum of $249.00 per child per month for a total of $498.00 per month.

Mother challenges findings of fact (**FOF**) nos. 9 and 10:

> 9. For child support purposes [Father]'s gross monthly income is determined to be $10,591.60, based on [Father]'s Exhibits A, D, and F.[4]
>
> 10. Pursuant to the Child Support Guidelines Worksheet attached to the Decision and Order, equal timesharing calculation, [Father] shall pay [Mother] as and for the support, maintenance, and education of the parties' two (2) minor children the sum of $249.00 per child per month for a total of $498.00 per month.

---

4    Exhibit A was Father's income and expense statement and asset and debt statement, both filed on December 28, 2018. Exhibit D was Father's W-2 earnings summary for tax years 2016 and 2017. Exhibit F consisted of Father's 2017 federal and state tax returns.

(Footnote added.)   Mother also challenges conclusion of law (**COL**) no. 13:

> 13.   Based on the Child Support Guidelines Worksheet (attached to the Decision and Order), commencing February 1, 2019, [Father] shall pay to [Mother] as and for the support, maintenance, and education of the parties' two (2) minor children the sum of $249.00 per child per month for a total of $498.00 per month, through Child Support Enforcement Agency by way of an income assignment.

The family court accepted neither Mother's nor Father's calculations of Father's gross income, and made its own calculation.   Other than the mention of Father's Exhibits A, D, and F, the family court did not explain how it calculated Father's gross monthly income.   Father made no attempt, either in the proposed findings of fact he submitted to the family court or in his answering brief in this appeal, to reconcile the family court's findings with the evidence in the record.   We cannot determine, based on the record, whether or not the family court's finding that Father's gross monthly income was $10,591.60 is supported by substantial evidence.   Accordingly, we vacate paragraph no. 3 of the Decision and Order and the related FOFs and COLs, and remand for the family court to either (a) enter specific findings of fact explaining its calculation of Father's gross monthly income, or (b) recalculate the amount of Father's monthly gross income and child support obligation.

> **B.   The 529 savings plan accounts are Mother's separate property; they should not have been allocated to pay a portion of Father's share of the Children's higher education expenses.**

Mother's second point of error is:   "Whether the Family [Court] erred in its interpretation and allocation of [Mother]'s 529 plan contrary to either the language and/or understanding or intent of the parties' Divorce Decree, and given the testimony and evidence received related [sic] to the 529 plan being owned by [Mother], and based on the law governing and interpreting such plans."

Mother's asset and debt statement identified a 529 savings plan account with a market value of $227,474.[5] The Decision and Order states, in relevant part:

> 5.     Post High [sic] School Education Expenses.
> [Mother] and [Father] shall each assume and pay a pro rata
> share of any and all costs of higher education expenses in
> which the child of the parties may enroll. . . . Commencing
> with school year 2019-2020, the 529 accounts for each child
> shall be applied directly to tuition, fees, and books,
> before determining each parties [sic] pro rata share.
>
> Said pro rata share shall be defined as the percentage
> which that parent's monthly net income (i.e., form [sic]
> Child Support Guidelines Worksheet Table) bears to the
> combined total of the parent's monthly net incomes (i.e.,
> from Child Support Guidelines Worksheet Table), all as is
> reflected on the Child Support Guidelines Worksheet or
> equivalent (i.e., currently depicted on line 3 of the Child
> Support Guidelines Worksheet).  Currently said percentages
> are thirty-eight percent (38%) by [Mother] and sixty-two
> percent (62%) by [Father].

(Some underscoring added.)  The Reconsideration Order states:

> As for clarification of the 529 accounts, this Court
> clarifies its order such that the 529 accounts shall be used
> to pay post-high school tuition, fees, and books each year
> commencing school year 2019-2020, for the child whose name
> is on the account until the funds are depleted.  All other
> expenses detailed in paragraph 5 of the Decision and Order
> entitled "Post-High School Educational Expenses" shall be
> split between the parties as provided in said paragraph.
> Once the 529 funds are depleted, the tuition, fees and books
> shall be paid by the parties as provided in paragraph 5 of
> the Decision and Order.

Mother challenges the following FOFs:

> 23.    The 529 accounts for each child shall be applied
> directly to tuition, fees, and books, before determining
> each parties' [sic] pro rata share.  All other expenses
> shall be paid by the parties per the pro rata share.
>
> .  .  .  .
>
> 25.    On [Mother]'s Asset and Debt Statement filed
> September 19, 2018, paragraph 4, [Mother] states that there
> are 529 accounts for the children in a total amount of
> $227,474.00.
>
> 26.    Per [Mother]'s testimony, [NJ] has approximately
> $47,000.00, [LJ] has approximately $97,000.00, and [CJ] has
> approximately $74,000.00 in their respective 529 accounts.

---

[5]     There were actually three 529 savings plan accounts — one for each of the Children — with a total value of $227,474.

> 27.    [Mother] . . . lists the title[] of . . . the
> . . . 529 to be in her name.
>
> . . . .
>
> 29.    The 529 plans were established for each child
> during the marriage and [Mother]'s family contributed monies
> to the 529 plans.
>
> 30.    [Mother] provided no proof that she was the sole
> owner of the 529 accounts and that they were not held for
> the benefit of each child.

FOF no. 23 is actually a conclusion of law, which we review de novo.  Mother also challenges the following COLs:

> 9.    The "529 Qualified Tuition Program" was enacted
> through *26 U.S.C. Section 529*.  In general, any contribu-
> tions to a qualified tuition program (529 Plan) on behalf of
> any designated beneficiaries (minor child) shall be treated
> as a complete gift to such beneficiaries, which is not a
> future interest in property.
>
> 10.    Any 529 Plans are considered completed gifts to
> the minor child, and do not belong to the parent.  Although
> a parent may be designated as the custodian of the 529 Plan,
> the ownership is that of the designated beneficiary, in this
> case the minor child.
>
> 11.    This Court has the authority to make a ruling
> affecting the 529 Plans since it is one of the stipulated
> issues before the court.

Mother first contends that the family court should not have addressed the 529 savings plan accounts because "allocation of the parties [sic] 529 plans was not included in either party's Motions [sic] for Post-Decree Relief."  We disagree.  Father's post-decree motion put payment of the Children's higher education expenses at issue.  "A 529 plan is a tax-advantaged savings plan designed to encourage saving for future education costs."  U.S. Sec. & Exch. Comm'n, <u>Investor Bulletin: An Introduction to 529 Plans</u> (May 29, 2018), https://www.investor.gov/introduction-investing/general-resources/news-alerts/alerts-bulletins/investor-bulletins-11 (**SEC Publication**).  Accordingly, it was appropriate for the family court to address the potential use of the 529 savings plan accounts when deciding the parties' respective obligations for payment of the Children's higher education expenses.

Mother next contends, and we agree, that the family court erred by concluding that the 529 savings plan accounts were

property of the Children.  Mother testified that the accounts were opened during the marriage, because:

> My parents and my grandmother were gifting money and they didn't wanna give it to me.  They gave it to the [Children] and they established those accounts for them.
>
> . . . .
>
> They're securities held in my name and I am -- the way I understand it is that if I want to use it for anything other than the [Children's] expenses, I will get a tax penalty, but they are technically my . . . securities.

Father's brief argues, without citing authority, that "The funds of [sic] the 529 accounts were gifts from [Mother]'s parents and grandparents [sic] or from the children's maternal grandparents [sic] with the specific intent to be used for higher educational [sic] purposes."  On that issue, 26 U.S.C. § 529 provides, in part:

> **(c)   Tax treatment of designated beneficiaries and contributors.--**
>
> . . . .
>
> **(2)   Gift tax treatment of contributions.**--For purposes of chapters 12 and 13--
>
> **(A)   In general.**--Any contribution to a qualified tuition program on behalf of any designated beneficiary--
>
> **(i)**   shall be treated as a completed gift to such beneficiary which is not a future interest in property[.]

However, "§ 529(c) deals with the 'tax treatment' of contributions to Section 529 accounts, not ownership of the accounts." In re Addison, 540 F.3d 805, 819 (8th Cir. 2008).  "[T]he treatment of these [529] plans for tax purposes does not control the determination of ownership[.]"  Berens v. Berens, 818 S.E.2d 155, 158 (applying North Carolina equitable distribution statute).

Mother testified on cross-examination:

> Q   So . . . you agree that these funds are in a 529, that you're the custodian for them.
>
> A   I agree that I am the owner of the 529 securities.

> Q      Okay.  With each [child] listed as the
> beneficiary, if you will, for those 529 plans.  Because it
> has to be a minor associated with each plan.
>
> A      Yes.
>
> Q      Okay.  Do you have any objection in applying
> those funds towards their higher education expenses?  That's
> what they're for.
>
> A      I would like to determine how those funds are
> spent for their . . . higher education. . . . Which may
> include graduate school.
>
> Q      Well, but my -- my question to you is do you
> have any objection in applying the 529 plans for their
> undergraduate education?
>
> A      Yes, I do.
>
> Q      And what would that -- what would your
> objections be?
>
> A      If I can cover their . . . education on my own,
> then -- with my own resources, then I would like to do so so
> that money is there for their graduate school, or if they do
> want to purchase real estate down the road.  And I . . .
> just wanna keep that for them as their . . . resources for
> down the road as much as possible.

Mother's understanding of her ownership of, and ability to use, the funds in her 529 savings plan accounts is correct.  According to the federal Securities and Exchange Commission:

> If you use 529 account withdrawals for qualified higher
> education expenses or tuition for elementary or secondary
> schools, earnings in the 529 account are not subject to
> federal income tax and, in many cases, state income tax.
> However, if 529 account withdrawals are not used for
> qualified higher education expenses or tuition for
> elementary or secondary schools, they will be subject to
> state and federal income taxes and an additional 10% federal
> tax penalty on earnings.

SEC Publication (underscoring added).  "The beneficiaries of 529 Savings Plans do not have any ownership or control of the funds; the plan participants can choose not to spend the money on their child's education and (after paying a penalty) spend the money on something else entirely."  Berens, 818 S.E.2d at 156.

> [P]arents are under no obligation to spend the money in a
> 529 Savings Plan on the educational expenses of the children
> listed as the plan beneficiaries.  For example, a family
> with four 529 Savings Plans, one for each of their four
> children, could later choose to use all the money for a
> single child with particularly high college expenses.  Or
> those same parents could withdraw all the money, pay a tax
> penalty, and buy a vacation home.  Whether these are wise

> decisions, or ones that parents likely would make, is irrelevant — parents <u>could</u> do so if they wanted, and this is proof that 529 Savings Plan contributions are not gifts to the plan beneficiaries. Thus, absent some additional actions by the parents to restrict the use of the 529 Savings Plan funds, those funds are solely the property of the parents.

<u>Id.</u> at 158 (citation and footnote omitted); <u>accord</u> <u>In re Hennessy</u>, 526 B.R. 806, 809 (Bankr. D. Minn. 2015) (noting that debtor, as the owner of 529 plans benefitting his minor children, could make decisions regarding each account, including withdrawing from the account and changing the beneficiary).

In this case, the parties' stipulated divorce decree states, in relevant part:

> b. **Bank Accounts.** . . .
>
> Any and all other . . . savings . . . accounts which are currently maintained in the sole and separate name of [Mother] or [Father] are awarded as the sole and separate property of the respective party who so maintains said account or accounts. Specifically, [Mother] is awarded as her sole and separate property any and all of her bank accounts, if any, and [Father] hereby waives any claim he may have thereto. [Father] is awarded as his sole and separate property any and all of his bank accounts, if any, and [Mother] hereby waives any claim she may have thereto.

Mother testified:

> Q And . . . why were you awarded those [accounts] in the decree?
>
> A Because . . . the securities were just whoever had whatever in their name. And when we split . . . we each had assets that . . . came from our families. Like, for example, [Father] had the Four K's Corporation that he had started with his . . . siblings. He had some family property. I had some family property that came with my family. And . . . so it seemed reasonable to just kind of let each of us -- like rather than try and argue over that kinda thing when it was clearly this is from his family, this is from my family, just do it that way and then make it less . . . difficult . . . a divorce.
>
> Q Okay. And so because the 529s had been funded by money from your family, that's why it [sic] went to you.
>
> A Yes.

Father agreed that he did not contribute any money to the 529 savings plan accounts at issue. Thus, under the divorce decree and the facts of this case, the 529 savings plan accounts are Mother's separate property, to use as she desires — even for

other than "qualified higher education expenses." The family court erred in its Decision and Order by requiring that "the 529 accounts for each child shall be applied directly to tuition, fees, and books, before determining each parties [sic] pro rata share." We vacate paragraph no. 5 of the Decision and Order[6] the related FOFs and COLs, and the paragraph in the Reconsideration Order dealing with the 529 accounts.

### C.   Mother's third point of error is moot.

Finally, Mother contends that the family court erred by denying her motion for reconsideration on the basis that it was untimely. The motion asked that the family court reconsider (1) its determination of Father's gross monthly income and (2) its allocation of the 529 savings plan accounts. Because we are vacating paragraphs 3 and 5 of the Decision and Order and the paragraph in the Reconsideration Order dealing with the 529 accounts, Mother's procedural appeal from the Reconsideration Order is moot.

## IV.   Conclusion

Based upon the foregoing, paragraphs 3 and 5 of the family court's Decision and Order, the related FOFs and COLs, and the paragraph in the Reconsideration Order dealing with the 529 accounts, are vacated, and this case is remanded to the family court for proceedings consistent with this opinion.

On the briefs:

Rebecca A. Copeland,
for Plaintiff-Appellant.

Blake T. Okimoto,
for Defendant-Appellee.

---

[6]      The provisions in paragraph no. 5 dealing with the parties' respective pro rata shares are also vacated because the percentages may change depending upon the family court's calculation of Father's gross monthly income on remand.