REL:  February 3, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2022-2023

_____

### 2210311 and 2210469
_____

**Birger Kristian Rasmussen**

**v.**

**Jennifer Ladner Rasmussen**

**Appeals from Jefferson Circuit Court
(DR-15-901811.01 and DR-15-901811.02)**

MOORE, Judge.

In appeal number 2210311, Birger Kristian Rasmussen ("the father") appeals from a judgment entered by the Jefferson Circuit Court ("the trial court") in case number DR-15-901811.01 ("the .01 action"), holding him in contempt and modifying the provisions of an earlier judgment divorcing him from Jennifer Ladner Rasmussen ("the mother").

2210311 and 2210469

In appeal number 2210469, the father appeals from a judgment entered by the trial court in case number DR-15-901811.02 denying, in part, his petition to modify the parties' divorce judgment. In appeal number 2210311, we affirm the trial court's judgment in part and reverse it in part. In appeal number 2210469, we affirm the trial court's judgment.

Procedural History

The parties were divorced by a judgment entered by the trial court on March 16, 2017; that judgment incorporated an agreement of the parties that, among other things, awarded the wife the marital residence and awarded the parties joint legal custody of their children -- Quaid, who was born on October 7, 2000; Clayton, who was born on March 16, 2002; and Reese, who was born on March 23, 2004. The mother was awarded sole physical custody of the children subject to the father's visitation and the father was ordered to, among other things, pay child support to the mother in the amount of $3,500 per month; to pay half of the costs for Reese's extracurricular activities until she commenced high school and thereafter to the extent that the costs for her high-school extracurricular activities "are not covered by the spirit pack" included in

2

the high-school education fund, which is discussed and described in more detail below;[1] to provide health insurance for the benefit of the children; and to pay half of the medical expenses incurred by the children that are not covered by insurance. The divorce judgment also contains the following provisions:

> "24. College Funds: The parties have 529 college accounts[2] for each child at Merrill Lynch. Such funds shall be dedicated to the college education of the children and shall be used for no other purpose than same without the mutual express agreement of both parties. [The father] shall provide to [the mother] copies of the end of year statement for each account within 30 days of his receipt of same. If there are any funds remaining in Quaid's 529 when he graduates from college, then that amount will be divided in half and deposited in equal amounts into the 529 accounts for Reese and Clayton. If there are funds remaining in Clayton's 529 account when

---

[1]The father testified that the "spirit pack" includes costs related to the children's participation in high-school athletics.

[2]In Adams v. Adams, 107 So. 3d 194, 196 n.1 (Ala. Civ. App. 2012), this court explained, with regard to 529 college accounts:

> "Congress created a tax exemption found in 26 U.S.C. § 529 in order to encourage taxpayers to save for future college expenses. See S. Rep. No. 104-281, 106, Pub. L. No. 104-188, 1996 U.S.S.C.A.N. 1474, 1580 (stating that the reason for the change in the law was to 'clarify the tax treatment of State-sponsored prepaid tuition programs and educational savings programs in order to encourage persons to save to meet post-secondary educational expenses')."

he graduates from college, then that amount will be deposited into the 529 account for Reese.

"25. High School Education: The parties shall segregate into a separate account at Merrill Lynch the sum of One Hundred Twenty-Five Thousand ($125,000.00) to be used for the high school education of the children, with said sum to be paid from the joint Merrill Lynch investment account. Said account shall be in the joint names of the parties and no withdrawals shall be made from same without the express mutual written agreement of the parties other than to pay the tuition, lunch account, registration fees, facility fees and spirit pack costs to Briarwood School (or other mutually agreed upon school). Should any funds remain after the last child completes Briarwood (or other mutually agreed upon school), any remaining funds shall be transferred into the children's 529 plans with an equal amount to be deposited into each account."

On October 11, 2019, the mother filed in the .01 action a verified petition for a rule nisi and a motion to modify the divorce judgment. She asserted, among other things, that the father had failed to pay child support as ordered in the divorce judgment and that he was in arrears in the amount of $2,000 at that time; had failed to pay his portion of the children's medical expenses that were not covered by insurance; and had failed to provide her with statements for the children's educational accounts as ordered in the divorce judgment. The mother requested that the trial court hold the father in civil and criminal contempt, direct the

4

father to pay the amounts owed for unpaid child support and medical expenses, and award her all costs of bringing the action. The mother also sought a modification of the divorce judgment to allow her to supervise the accounts containing educational funds for the children and an award of attorney's fees. The father filed an answer to the mother's petition on December 13, 2019. On that same date, the father filed a motion seeking to modify the divorce judgment regarding custody of the children and his child-support obligation to the mother. In response to an objection filed by the mother, the trial court directed the father to pay a filing fee to initiate a separate case to pursue the relief he was seeking in his December 13, 2019, motion.

In response to the trial court's order in the .01 action, the father filed, on April 21, 2020, a petition seeking to modify the divorce judgment to terminate or reduce the amount of his child-support obligation, to increase his custodial periods with the children, and to award him credits against his current child-support arrearage and any future child-support payments; that action was assigned case number DR-15-901811.02 ("the .02 action"). With regard to his request for a modification of his child-

5

support obligation, the father asserted, among other things, that Quaid had reached the age of majority, that Clayton would soon reach the age of majority and would be attending college, and that the needs of the remaining minor children had changed. The trial court entered orders in the .01 action and the .02 action consolidating the cases for trial.

In response to a motion filed by the mother, the trial court entered an order in the .01 action on January 31, 2021, directing the father to transfer the 529 college account for the parties' oldest child, Quaid, into the mother's name or to add the mother's name to the account in order to allow her to administer and to control the account. The trial court also ordered the father to reimburse the mother for the payment of Quaid's rent in the amount of $705.10 within 48 hours of the entry of the order.

The trial commenced on May 10, 2021, and was subsequently concluded on December 1, 2021. On December 1, 2021, the trial court entered an order in the .01 action in which it found the father in criminal and civil contempt for his willful failure to comply with the court's orders regarding his failure to pay child support and the half of the children's noncovered medical expenses that had been incurred and directing that

he be incarcerated for 45 days or, in the alternative, released upon the payment of a cash bond in the amount of $25,000.

On December 18, 2021, the trial court entered a final judgment in the .01 action reducing the father's child-support obligation to $1,000 per month beginning January 15, 2022, based on the parties' two older children having attained the age of majority; denying the father's request for a retroactive reduction of his child-support obligation because, the trial court stated, he had "come[] to court with unclean hands;" determining that the father owed an arrearage for unpaid child support in the amount of $65,000, plus interest of $6,000, but crediting the father $25,000 toward that arrearage based on the father's payment thereof on December 1, 2021; denying the father's petition to modify custody; directing the father to transfer ownership of the 529 college accounts to the mother; directing the mother to administer all of the children's educational accounts, including the high-school education fund; determining that the father owed an arrearage in the amount of $15,548.24 for unpaid medical expenses and activity fees for the children; noting that the contempt issue had been addressed by a separate order;

7

directing the father to pay $30,000 toward the mother's attorney's fees; and denying all remaining requested relief. That same judgment was entered in the .02 action on December 20, 2021.

Both the mother and the father filed timely postjudgment motions in both the .01 action and the .02 action. Following a hearing, the trial court entered an order in the .01 action on February 7, 2022, denying both parties' postjudgment motions. The father's notice of appeal in the .01 action, which had been filed on January 11, 2022, and had been held in abeyance during the pendency of the parties' postjudgment motions, became effective at that time. See Rule 4(a)(5), Ala. R. App. P. On February 15, 2022, the trial court entered an order in the .02 action denying both parties' postjudgment motions. The father filed his notice of appeal in the .02 action on March 11, 2022. This court consolidated the appeals in response to a motion filed by the father.

<u>Appeal Number 2210311</u>

<u>Contempt</u>

We first address the father's challenges to the order entered in the .01 action finding him guilty of civil and criminal contempt. The father

argues that the trial court's finding of civil contempt is due to be reversed because the order speaks only to criminal contempt. Our supreme court has observed that the elements of civil and criminal contempt often overlap but that, "[i]n appropriate circumstances, … a party's actions can support a finding of both civil and criminal contempt." State v. Thomas, 550 So. 2d 1067, 1073 (Ala. 1989). This court discussed the standard of review as to criminal and civil contempt in Kizale v. Kizale, 254 So. 3d 233, 237-38 (Ala. Civ. App. 2017):

> "The two types of contempt -- criminal and civil -- are governed by different standards of review. In the case of civil contempt, we have often explained that
>
>> "'whether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm.'
>
> "Stack v. Stack, 646 So. 2d 51, 56 (Ala. Civ. App. 1994); see also Hammock v. Hammock, 867 So. 2d 355, 359-60 (Ala. Civ. App. 2003).
>
> "Unlike civil contempt, criminal contempt requires proof beyond a reasonable doubt of the alleged contemnor's guilt. See Ex parte Ferguson, 819 So. 2d 626, 629 (Ala. 2001).

9

"'[T]he standard of review in an appeal from an adjudication of criminal contempt occurring in a civil case is whether the offense, i.e., the contempt, was proved beyond a reasonable doubt. Hicks v. Feiock, 485 U.S. 624, 108 S. Ct. 1423, 99 L. Ed. 2d 721 (1988); Combs v. Ryan's Coal Co., 785 F.2d 970 (11th Cir. 1986); and United States v. Turner, 812 F.2d 1552 (11th Cir. 1987) .... In Turner, the Court, in discussing the standard of review in a criminal-contempt case, said:

"'"The essential elements of the criminal contempt for which punishment has been imposed on [the defendant] are that the court entered a lawful order of reasonable specificity, [the defendant] violated it, and the violation was wilful. Guilt may be determined and punishment imposed only if each of these elements has been proved beyond a reasonable doubt."

"'Turner, 812 F.2d at 1563. ...'

"Ex parte Ferguson, 819 So. 2d at 629."

(Footnote omitted.)

Rule 70A(a)(2)(D), Ala. R. Civ. P., defines "civil contempt" as "willful, continuing failure or refusal of any person to comply with a court's lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with." The father admitted

10

at the trial that he had unilaterally reduced and had later terminated his child-support payments despite having the ability to pay. The trial court determined that the father's willful failure to pay the court-ordered monthly child-support amount of $3,500 from August to December 2019 and from January 2020 to November 2021 amounted to both civil and criminal contempt.

The father cites In re Powers, 523 So. 2d 1079, 1082 (Ala. Civ. App. 1988), for the proposition that "[a]n error in judgment without clear and convincing evidence of bad faith intent is insufficient for a finding of contempt." He also relies on Rhodes v. Rhodes, 317 So. 3d 37, 47 (Ala. Civ. App. 2020), in which Judge Moore, joined by Judge Edwards, cited that proposition from Powers in a special writing concurring in all aspects of the main opinion except for its affirmance of the finding of contempt against the husband for his failure to pay child support. The special writing in Rhodes concluded that the contempt finding in that case should be reversed because the husband in that case had mistakenly, with no evidence of bad-faith intent, believed that his child-support obligation should be reduced based on one of the children having

11

reached the age of majority. Id. at 47 (Moore, J., concurring in part and dissenting in part). Unlike in Rhodes, however, the father in the present case is not an average layperson but, rather, is a practicing attorney, a fact that the trial court observed during the trial while noting the father's understanding of the importance of following a court order. Indeed, the father acknowledged at a September 24, 2020, pretrial hearing that he "kn[e]w that [he had] done something improper already by reducing the child support." Thus, the trial court did not err in concluding that the father's willful failure to comply with the divorce judgment supported a finding of both civil and criminal contempt.

The father argues that the trial court's order of contempt requires reversal because it is impossible to determine how the court arrived at its sentence. We note, however, that the trial court explained at the close of the trial that, because it was considering the father's request for a modification to his child-support obligation with regard to the alleged counts of contempt that had occurred after the filing of the .02 action, it had limited the bond amount and the counts of contempt for which the father was sentenced to the nine occasions on which he had unilaterally

12

reduced his child-support obligation before that filing. Because we are able to discern how the trial court arrived at its imposition of the father's sentence of 45 days for the 9 counts of contempt, see § 12-11-30(5), Ala. Code 1975 (allowing for a maximum punishment of 5 days per count of contempt), the father's argument does not merit reversal.

The father also argues that the trial court erred in requiring him, in the alternative to serving the 45-day sentence, to post a bond in the amount of $25,000. He asserts that the trial court erred in that regard because, he says, the mother's contempt petition did not indicate that she was seeking to have the court set a bond. See § 30-3-6, Ala. Code 1975 (allowing a court to issue an order requiring the obligor to post a bond for the enforcement of support "where request therefor is included in the petition or other pleading"). We note, however, that the mother requested at the trial, without objection by the father, that a bond amount be set for the amount of the father's child-support arrearage. Thus, the trial court could have concluded that the issue was tried by the implied consent of the parties. See Rule 15(b), Ala. R. Civ. P. (stating that, "[w]hen issues not raised by the pleadings are tried by express or

13

implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings"), and Young v. Corrigan, 253 So. 3d 373, 379 (Ala. Civ. App. 2017) (quoting S.A.M. v. M.H.W., 227 So. 3d 1232, 1233 (Ala. Civ. App. 2017)) ("When an issue is 'raised at trial without objection, … it [is] tried by the implied consent of the parties.'"). We also cannot agree with the father that the amount of the bond set by the trial court was in error. See § 30-3-6 (stating that the amount of the bond to be required is at the discretion of the court). Accordingly, we affirm the trial court's contempt order regarding the amount of the bond.

529 College Accounts

The father argues on appeal that the trial court erred in directing him to transfer ownership of the 529 college accounts to the mother and in directing that the mother administer the children's educational accounts. Specifically, he argues that that portion of the trial court's judgment amounts to an impermissible modification of the property division awarded in the divorce judgment. See, e.g., LaFontaine v. LaFontaine, 294 So. 3d 774, 777 (Ala. Civ. App. 2019) ("Alabama law does

14

not authorize a trial court to modify a property division more than 30 days after the entry of the final judgment effectuating such division.").

In support of his argument, the father cites Berens v. Berens, 260 N.C. App. 467, 818 S.E.2d 155 (2018), in which the Court of Appeals of North Carolina affirmed, pursuant to an equitable distribution of property following the parties' divorce, the classification and division of 529 plans, which the parties in that case had funded for their children, as marital property. The father also cites J.W. v. R.J., 146 Haw. 581, 589-90, 463 P.3d 1238, 1246-47 (Haw. Ct. App. 2020), in which the Intermediate Court of Appeals of Hawaii considered post-divorce proceedings related to child support and college expenses for the children of the parties involved in that case. That court determined that, because the divorce judgment at issue in that case had directed that the accounts maintained in the separate name of each party would remain the separate property of that party, the family court had erred in directing, in the post-divorce proceeding, that the "529 savings plan accounts" for the parties' children be applied directly to tuition, fees, and books, when those accounts had been solely in the former wife's name. Id. Unlike in

J.W., the divorce judgment in the present case directed, pursuant to an agreement of the parties, that the 529 college accounts be used for no purpose other than the college educations of the children.

Although the mother has not favored this court with a brief in response to the father's brief on appeal, she argued at the hearing on the parties' postjudgment motions that the children's educational accounts were in the nature of child support. In Ramsey v. Ramsey (No. 25810, Apr. 18, 2012) (Ohio Ct. App. 2012) (not reported in North Eastern Reporter), the Ohio Court of Appeals declined to view the transfer of "529 Plan accounts" from the control of one parent to the other parent in post-divorce proceedings as an impermissible post-divorce modification of the division of the parties' marital property. That court determined that the 529 accounts at issue in that case had not been addressed by the domestic-relations court in its division of the parties' property but, rather, had been addressed as part of the parties' shared parenting plan, which concerned matters involving the parties' children and was attached to and incorporated into the divorce judgment. Id. Additionally, the Ohio Court of Appeals noted that the shared- parenting plan in that

case directed that the owner of the 529 accounts was required to turn over any balance remaining in the accounts to the child for whose benefit the account was established upon the child's attainment of age 25 and the completion of a four-year college degree.  Id.  The court concluded that the parties and the domestic-relations court had viewed the accounts as something other than marital or separate property to be divided and that, as a result, the domestic-relations court was authorized to modify the terms of the shared-parenting plan.  Id.

Like in Ramsey, it appears that the parties in this case regarded the 529 college accounts as being in the nature of child support, as argued by the mother at the hearing on the postjudgment motions.  The trial court also adopted that interpretation when it incorporated the parties' agreement in the divorce judgment.  This court has acknowledged that "the general principles concerning child support are equally applicable to a motion for post-minority college support."  Griggs v. Griggs, 638 So. 2d 916, 919 (Ala. Civ. App. 1994).  Moreover, this court has confirmed that an agreement entered into by a parent, which obligates that parent to support or educate a child who has attained the age of majority and which

17

has been incorporated into a divorce judgment, can be enforced and modified. Cunningham v. Cunningham, 500 So. 2d 22, 24 (Ala. Civ. App. 1986).

The father asserts, however, that the divorce judgment fails to provide for the ownership of any funds remaining in the 529 college accounts after each of the children's college expenses are satisfied. Although the divorce judgment provides that the remainder of any funds in the 529 college accounts for Quaid and Clayton would be deposited into the 529 college account for Reese, it fails to provide for the ownership of any funds remaining in the 529 college accounts after all three of the children have graduated college. In Williams v. Williams (FSTFA114021238S, Mar. 21, 2017) (Conn. Super. Ct. 2017) (not reported in Atlantic Reporter), the Superior Court of Connecticut considered certain 529 accounts that Karen Williams and Willis Williams had established for their children and of which Willis remained the custodian following their divorce. Pursuant to an agreement incorporated into the Williamses' divorce judgment, the funds contained in the 529 accounts could not be used for any purpose other than their

children's educational expenses. <u>Id.</u> Karen later died and the executor of her estate sought to compel Willis to comply with the parties' agreement and apply funds from the 529 account for the Williamses' oldest child toward her educational expenses. <u>Id.</u> The Connecticut Superior Court determined, among other things, that the 529 accounts were marital property, that Willis had been named the custodian of the accounts in the divorce judgment, and that a post-divorce transfer of ownership to the executor would amount to an impermissible postjudgment modification of the parties' property distribution. <u>Id.</u> The Connecticut Superior Court proceeded, however, to acknowledge the terms of the divorce judgment limiting the use of the funds in the 529 accounts, to direct Willis to apply the funds of the parties' oldest child to that child's educational expenses in accordance with the divorce judgment, and to direct that Willis make payments as directed by the executor within 10 days of the date that the executor notified him of the expense to be paid. <u>Id.</u>

In the present case, like in <u>Williams</u>, the divorce judgment incorporated an agreement of the parties limiting the use of the funds in

the children's 529 college accounts. Thus, as discussed previously, the trial court in this case could enforce and modify that judgment to effectuate the terms of the parties' agreement. See Cunningham, supra. This court acknowledges, however, that, because the terms of the parties' agreement and the divorce judgment are silent as to the ownership of any funds remaining in the accounts after all three children have graduated college or otherwise failed to utilize the entirety of those funds, the owner of the 529 college accounts in the present case could, among other things, withdraw any remaining funds therein as a nonqualified withdrawal.[3]

---

[3]The Alabama Treasury Department, on a web page designed to provide information regarding the "CollegeCounts 529 Fund," see § 16-33C-10(a), (b), Ala. Code 1975, which the web page describes as "a qualified tuition program under Section 529 of the Internal Revenue Code," provides that, if a beneficiary of that program does not attend college or use all of the funds available, the owner of the fund may withdraw the funds as a nonqualified withdrawal, subject to federal and state income taxes and a 10% federal penalty tax; leave the funds in the account in the event the beneficiary or another member of the owner's family goes back to school at a later date; or change the beneficiary to another member of the family for their college expenses. See Cooper v. MTA, Inc., 166 So. 3d 106, 108 n.3 (Ala. 2014) (stating that, pursuant to Rule 201(b)(2), Ala. R. Evid., an appellate court "may take judicial notice of facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned'"). On the date this opinion was released, the web page could be found at collegecounts529.com/faqs/.

See § 40-18-15(a)(28), Ala. Code 1975. It appearing that the owner of the accounts would have the authority to make a determination regarding the balance of any remaining funds, we conclude that the owner of the accounts retains a property interest in that remainder.

Because the trial court was within its discretion to limit the use of the 529 college accounts to the education of the parties' children and may modify and enforce that agreement in accordance with the terms of the divorce judgment to effectuate the purpose of the parties' agreement, the trial court did not err in directing that the mother be permitted to administer the 529 college accounts to ensure the father's compliance with the divorce judgment. Like in Williams, however, we hold that, in this case, the trial court's purported transfer of the ownership of the 529 college accounts from the father to the mother amounts to an impermissible modification of the property division contained in the divorce judgment.[4] We therefore reverse the trial court's judgment with

---

[4]The father is correct that, although the divorce judgment does not specifically award either party ownership of the 529 accounts, he remained the owner of the accounts because he was the owner of the accounts at the time the judgment was entered. See Ex parte Davis, 495

2210311 and 2210469

regard to the transfer of the ownership of those accounts and remand the case for the entry of a judgment consistent with this opinion.

Attorney's Fees

The father argues that the trial court erred in awarding attorney's fees to the mother. He cites § 12-21-137, Ala. Code 1975, which speaks to the right of every party to cross-examine witnesses called against him or her, in support of his assertion that his due-process rights were violated by the trial court's refusal to allow him to cross-examine the mother's attorneys. We note, however, that it does not appear from the record on appeal that the father was denied that opportunity. The mother's attorneys were sworn in and presented statements to the trial court regarding their qualifications, their representation of the mother in the present actions, and their hourly rates. Following those statements, the mother rested her case, and the father was directed to

_____

So. 2d 672, 673 (Ala. 1986) (holding that "when a trial court does not make specific disposition of an asset in a divorce decree, the parties are left in the same position relative to that asset as they were in before the divorce"). Additionally, the divorce judgment requires the father to provide statements of the 529 college accounts to the mother, apparently in acknowledgment of the father's ownership of the accounts.

22

call his first witness. The father called himself as a witness and sought to make a statement in "response to the fees." The trial court instructed the father that, if it were to award attorney's fees, he could then file an objection and the trial court would set the objection for a hearing and entertain the father's arguments against the award of attorney's fees. The father did not request to cross-examine the mother's attorneys at the trial before the mother rested her case or request that he be permitted to present evidence regarding the attorney's fees at the hearing on the parties' postjudgment motions. Accordingly, we cannot conclude that the father's right to cross-examine witnesses was violated.

The father also argues that insufficient evidence was presented regarding the nature of the attorney's fees that were awarded. He asserts that it is impossible to discern how many hours claimed by the mother's attorneys had been devoted to the mother's criminal-contempt claims, which, he argues, cannot support an award of attorney's fees, and how many hours had been devoted to the remaining issues. The trial court did not specify whether it awarded attorney's fees with regard to the contempt claims or the modification claims. The father has failed to

argue on appeal that the trial court erred in awarding attorney's fees with regard to the modification claims; thus, any such argument is waived. See Gary v. Crouch, 923 So. 2d 1130, 1136 (Ala. Civ. App. 2005). Although the father is correct that "a trial court may not award an attorney fee based on a finding of criminal contempt," Kizale, 254 So. 3d at 240 n.7., this court has also affirmed that "[a]n award of attorney fees in a case containing both a civil and a criminal contempt finding is not in error." Id. Having affirmed the trial court's findings of civil and criminal contempt, we cannot conclude that the trial court erred in awarding attorney's fees related thereto in the present case.

## Appeal Number 2210469

## Child Support

The father argues that the trial court erred when it reduced his child-support obligation from $3,500 per month for the parties' three children to $1,000 per month for only the parties' youngest child, Reese. The modification of child support rests within the sound discretion of the trial court and the trial court's judgment on that issue "will not be reversed absent a showing of an abuse of discretion or a showing that the

judgment is plainly and palpably wrong." Douglass v. Douglass, 669 So. 2d 928, 930 (Ala. Civ. App. 1995). The father cites, among other cases, Dyas v. Dyas, 683 So. 2d 971, 973 (Ala. Civ. App. 1995), for the proposition that, when, as in the present case,

> "the combined adjusted gross income exceeds the uppermost limit of the child support schedule, the amount of child support awarded must rationally relate to the reasonable and necessary needs of the child, taking into account the lifestyle to which the child was accustomed and the standard of living the child enjoyed before the divorce."

The father asserts that the trial court did not receive sufficient evidence to determine that the youngest child needed $1,000 per month in financial support to maintain that child's standard of living before the divorce. As noted, the original child support award of $3,500 per month was for all three of parties' children. At the time of the trial, the two older children had reached the age of majority, justifying the reduction in the father's monthly child-support obligation. The trial court heard evidence from which it could have determined that the youngest child had financial needs similar to those she had at the time of the entry of the 2017 divorce judgment. As the father points out in his brief, at the time of the trial, most of the youngest child's educational costs were being

25

covered by the parties' agreement to set aside funds for that purpose, the youngest child's health insurance was being provided by the father, and the youngest child was living rent-free in the former marital home, which was unencumbered by a mortgage; however, the child still requires food and clothing and incurs other living expenses. From the testimony of the father indicating that he had provided the youngest child with a computer, a cellular telephone, dresses, and other accessories, the trial court could have determined that the youngest child had enjoyed an elevated standard of living that required at least $1,000 per month, which amount, we note, actually falls below the proportionate share of child support for the two older children. Because we do not agree that the trial court abused its discretion in declining to further reduce the amount of the father's monthly child-support obligation, its calculation thereof is affirmed.

The father next argues that the trial court erred by refusing to allow him to present evidence regarding any credits or set-offs against his child-support arrearage to which he may have been entitled. We note that the father testified, without objection, that he was requesting credit

for certain purchases that he had made for the children and for benefits that they had received as a result of his military service. The father, who is an attorney and represented himself along with his co-counsel, questioned the mother and sought, albeit unsuccessfully, to elicit testimony from her regarding certain expenditures that the father had made on behalf of the children.

Upon the father's third attempt to elicit testimony from the mother regarding his purchase of clothing for the children, the trial court inquired as to the line of questioning. The father responded that he was seeking a credit for certain purchases that he had made for the children, and, in response, the trial court indicated that caselaw did not allow for "an offset for buying extra things for your children." See Caswell v. Caswell, 101 So. 3d 769, 775-76 (Ala. Civ. App. 2012) ("A noncustodial parent may not receive credit against his or her child-support obligation by providing the child with gifts, luxuries, or other nonessential 'extras' that do not directly go to the basic support of the child."). The father then requested that the trial court allow him to "brief that issue before making its final decision," and the trial court welcomed the father to do so and

allowed the father to proceed. (R2. 367-69). There is no indication that the trial court prevented the father from presenting additional evidence thereafter regarding amounts for which he sought a credit, and the father failed to file a brief with regard to the issue before the entry of the trial court's judgments in both actions. Because the father was permitted to present evidence related to his request for credits for expenditures that he had made on behalf of the parties' children and there is no indication that the trial court prevented the father from presenting additional evidence on that matter, the father's argument on this issue does not merit reversal.

The father next challenges as error the trial court's refusal to retroactively reduce his child-support obligation to the date his modification petition was filed. The trial court denied the father's request for a retroactive reduction based on the father's having come into court with unclean hands. See, e.g., Burkett v. Gresham, 888 So. 2d 505, 509 (Ala. Civ. App. 2004) ("The clean-hands doctrine may be applied in actions involving the modification of child support."). To the extent the father argues that the mother failed to properly assert the clean-hands

doctrine, we note that, in her response to the father's counterclaim to modify child support in the .01 action, the mother asserted that the father had "unclean hands" related to his failure to make child-support payments; she again asserted that the father had "unclean hands" at the trial, without objection from the father. See Rule 15(b), supra.

In Burkett, supra, this court stated, in pertinent part:

"'The purpose of the clean hands doctrine is to prevent a party from asserting his, her, or its rights under the law when the party's own wrongful conduct renders the assertion of such legal rights "contrary to equity and good conscience."' J & M Bail Bonding Co. v. Hayes, 748 So. 2d 198, 199 (Ala. 1999) (quoting Draughon v. General Fin. Credit Corp., 362 So. 2d 880, 884 (Ala. 1978)). It is well settled that the decision whether to apply the clean-hands doctrine is within the sound discretion of the trial court. Borcicky v. Borcicky, 763 So. 2d 265 (Ala. Civ. App. 2000); Grant v. Smith, 661 So. 2d 752 (Ala. Civ. App. 1994)."

888 So. 2d at 509. This court has also confirmed that "[w]hether to make a parent's child-support obligation retroactive to the date the petition to modify was filed is a decision committed to the sound discretion of the trial court." Walker v. Lanier, 221 So. 3d 470, 472 (Ala. Civ. App. 2016).

As discussed above, the trial court was presented with evidence from which it could have determined that the father had willfully failed

to pay his child-support obligation as ordered. Having already concluded that the trial court did not err in finding the father in contempt for his failure to make child-support payments as ordered, we do not agree with the father that the trial court's application of the doctrine of clean hands in declining to retroactively reduce his child-support obligation amounts to an abuse of discretion. Additionally, to the extent the father asserts that the reduction in child support should have been made retroactive based on the mother's having filed two requests for continuances, we note that the trial court could have also considered the father's request for a continuance only three days before a scheduled trial date, his failure to obtain counsel until shortly before that time despite having been aware of the contempt claims for over a year, and evidence presented at the trial indicating that the father had employed tactics to make the litigation difficult and to increase the mother's attorney's fees. Because the trial court could have concluded that it was the father's actions that had resulted in any delay in its adjudication of his request for a reduction in his monthly child-support obligation, we cannot agree that the trial court abused its discretion in declining to retroactively reduce that amount.

The father last argues that the trial court erred in ignoring certain payments he had purportedly made to the mother for which he says he should have received credit in the calculation of his child-support arrearage. He admits, however, that the mother had not negotiated certain checks that he had purportedly provided to her, and the mother testified that, when she had attempted to cash a check from the father in the amount of $50,000, the funds had been unavailable. The father fails to present any authority in support of his apparent assertion that he is entitled to a credit for amounts that were never received by the mother. See Rule 28(a)(10), Ala. R. App. P. Accordingly, this argument does not merit reversal and the trial court's calculation of the father's child-support arrearage is affirmed.

## Conclusion

In appeal number 2210311, we reverse the trial court's judgment insofar as it transferred ownership of the 529 college accounts to the mother and we remand the case for the entry of a judgment in conformance with this court's opinion. In all other respects, we affirm

2210311 and 2210469

the trial court's judgment in appeal number 2210311.  In appeal number

2210469, we affirm the trial court's judgment.

2210311 -- AFFIRMED IN PART; REVERSED IN PART; AND

REMANDED.

2210469 -- AFFIRMED.

Thompson, P.J., and Edwards, Hanson, and Fridy, JJ., concur.