THOMAS, Judge.
Edward Kizale ("the former husband") and Nancy Kizale ("the former wife") were divorced by a September 2014 judgment of the Morgan Circuit Court ("the trial court"). The parties had previously been awarded custody of their grandchildren after the death of the grandchildren's mother, the parties' daughter; the September 2014 divorce judgment awarded the parties joint legal custody and the former wife sole physical custody of the grandchildren. Among other things, the September 2014 divorce judgment also ordered the former husband to pay $898 in child support each month and to "assume ..., indemnify, and hold harmless the [former] wife from liability" and to "remove her name as a joint user" on the following specified debts: the balance owed on the Wells Fargo PMA Visa card, the balance owed on the Wells Fargo line of credit, the Bank of America debt, and the Chase debt (hereinafter referred to collectively as "the specified debts"). The former husband's $898 per month child-support obligation was originally based on the former husband's imputed 2014 annual income of $43,500 and the former wife's imputed minimum-wage income (amounting to $1,257 per month); however, during the pendency of the former husband's postjudgment motion directed *235 to the divorce judgment, the parties reached an agreement, which the trial court approved, that the former husband would pay $800 per month in child support. The September 2014 divorce judgment specifically determined that both parties were voluntarily underemployed.
In September 2015, the former wife filed a petition seeking to hold the former husband in contempt for, among other things, failing to timely pay child support as ordered and failing to remove her name as a joint user from the Bank of America and Wells Fargo accounts. The former husband answered the former wife's petition, generally denying that he was in contempt, and counterclaimed, seeking a reduction of his child-support obligation and that the former wife be held in contempt for failing to permit certain visitation. Both parties sought an award of attorney fees.
Although certain issues were determined in a February 15, 2016, order, the trial court held a trial on the contempt, child-support, and debt issues in May 2016. The trial court entered a final judgment in August 29, 2016 ("the contempt judgment"), determining that the former husband was in civil and criminal contempt for failing to remove the former wife's name from the accounts related to the specified debts and declining to modify his child-support obligation. Regarding the provision requiring the former husband to assume liability for the specified debts, the contempt judgment states:
"The Final Decree requires [the former husband] to assume and pay the [specified] debts. The Final Decree also required [the former husband] to remove [the former wife's] name from [the specified] debt[s]. ...
"[The former husband] admits that he has failed to refinance [the specified] debt[s] or otherwise put the [specified] debt[s] in his sole name, and testified that he 'wasn't sure that was the best course of action.' The Court finds that he has not complied with the Orders of the Final Decree and has had the ability to do so. Therefore, the Court finds beyond a reasonable doubt that [the former husband] is in criminal contempt and continuing civil contempt of court for failing to abide by the Order in the Final Decree. ... To purge himself of civil contempt, [the former husband] shall, within ninety (90) days, refinance the Wells Fargo debts, the Bank of America debts, and the Chase debt, which is in the joint names of the parties, as previously Ordered, and shall finance [the specified debts] in his name only."
The trial court sentenced the former husband to a period of incarceration but suspended that sentence. The contempt judgment further ordered the former husband to pay $1,500 toward the former wife's attorney fees and pronounced that any relief specifically requested but not awarded was denied. After his postjudgment motion was denied by operation of law, see Rule 59.1, Ala. R. Civ. P., the former husband timely appealed from the contempt judgment.
The testimony at the contempt trial reflects the following facts. The former husband is self-employed. At the time of the divorce trial, the former husband was apparently earning money by "flipping" houses. He had also invested in some parcels of real property, which property he had sold, some at a loss, after the divorce. Detailing the profit and loss on each property is unnecessary, because the trial court stated in the contempt judgment that "most of these investments did not realize substantial income," and the trial court did not consider the losses sustained to be so substantial and continuing as to warrant a modification of the agreed upon child-support *236 obligation. The former husband does not challenge those findings on appeal.
The former husband explained that he had decided to leave the real-estate investment market and to pursue a new business opportunity-creating a company "to provide wireless internet and loyalty and customer targeting services to its customers." The former husband explained that he had invested quite a bit of time to learn about and to develop a cellular-telephone application that would serve these purposes, and he testified that, within a month of the contempt trial, he expected to be earning $6,000 per month from this venture. He said that he had been living off of his retirement funds and had utilized those funds to pay his child-support obligation since the entry of the September 2014 divorce judgment. According to the former husband, he had, at the time of the trial on the contempt action, $6,400 in an individual retirement account and $4,000 in an "Edward Jones account." He said that the $800 per month child-support figure had been "flawed" because he had not really been realizing rental income from his investment properties at the time of the entry of the September 2014 divorce judgment and that he had been living off of his retirement funds even then.
The trial court asked the former husband, whom it had specifically concluded in the September 2014 divorce judgment was underemployed based on his previous employment and his education level, why he could not work a full-time job and use his spare time to create his new business until it became successful instead of living off of his dwindling retirement accounts and seeking a reduction in his child-support obligation. The former husband explained:
"I feel victimized here. I'm the only parent involved in maintaining the lifestyle for my [grandchildren]. I wish the other side of this equation would try to contribute to the welfare of the [grandchildren]. I'm sort of taking this exception to having this burden completely put on myself. I'm doing my best to take care of the [grandchildren], and I think that is-the best for myself and my [grandchildren] to get them into a position where their future is secure. I'm trying to get them involved with this business. I've applied for Boulder, Colorado, to do a programming job. Part of the problem is I'm technologically obsolete. The languages and the operating systems I have worked on are obsolete. Everything is cloud based. It's in the cloud. No one uses that. So I'm at a disadvantage. I cannot get the kind of salary to maintain the-my earn rate, my debt ratios, for the month. I need to get something that goes beyond working-or working at [a discount retailer]. That's not going to pay the bills. It may pay the $800 a month [in child support], but it's just not going to work out."
The former husband testified that he believed that he could pay $500 per month in child support for the next year. He said that he would be happy to return to court the following year to recalculate child support when, he said, he expected to be earning $10,000 per month. The trial court appended to the contempt judgment a child-support-guidelines form indicating that the trial court had imputed income of $3,625 per month to the former husband and income of $1,797 per month to the former wife[1] to calculate a monthly child- *237 support obligation of $761.12. The trial court specifically noted that, although the former husband's current child-support obligation of $800 per month exceeded the amount calculated pursuant to the guidelines, the variance was less than 10% and, thus, the rebuttable presumption in favor of a modification set out in Rule 32(A)(3)(b), Ala. R. Jud. Admin., was not applicable.
Regarding the provision in the September 2014 divorce judgment requiring the former husband to assume the specified debts, the former husband testified that he had attempted to remove the former wife as a joint user of the accounts related to the specified debts. He said that "Wells Fargo will not allow it, nor will the Bank of America, and I have a reason [sic] statement to show that." Later, the former husband mentioned having repeatedly attempted to have the former wife removed from the accounts related to the specified debts and stated that he had received a letter from Bank of America regarding his request. However, the record contains no documentary evidence indicating that Wells Fargo or Bank of America had declined any request by the former husband to have the former wife removed from the accounts related to the specified debts. Counsel for the former wife questioned the former husband about his efforts to assume the liability for the specified debts:
"[Former wife's counsel]: You haven't attempted to consolidate the[ ] [specified] debts and work with a debt consolidation agency to remove her name and put these in your name?
"[Former husband]: I'm not sure if that's the best course of action because that would basically show as a bankruptcy. It has the same-I'm trying to rebuild my credit and to do a debt consolidation would further damage my credit."
The former husband first argues that the trial court erred in holding him in both criminal and civil contempt[2] of the September 2014 divorce judgment when that judgment did not order him to refinance or otherwise put the specified debts in his sole name. The two types of contempt-criminal and civil-are governed by different standards of review. In the case of civil contempt, we have often explained that
"whether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm."
Stack v. Stack, 646 So.2d 51, 56 (Ala. Civ. App. 1994) ; see also Hammock v. Hammock, 867 So.2d 355, 359-60 (Ala. Civ. App. 2003).
Unlike civil contempt, criminal contempt requires proof beyond a reasonable *238 doubt of the alleged contemnor's guilt.[3] See Ex parte Ferguson, 819 So.2d 626, 629 (Ala. 2001).
"[T]he standard of review in an appeal from an adjudication of criminal contempt occurring in a civil case is whether the offense, i.e., the contempt, was proved beyond a reasonable doubt. Hicks v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed. 2d 721 (1988) ; Combs v. Ryan's Coal Co., 785 F.2d 970 (11th Cir. 1986) ; and United States v. Turner, 812 F.2d 1552 (11th Cir. 1987).... In Turner, the Court, in discussing the standard of review in a criminal-contempt case, said:
" 'The essential elements of the criminal contempt for which punishment has been imposed on [the defendant] are that the court entered a lawful order of reasonable specificity, [the defendant] violated it, and the violation was wilful. Guilt may be determined and punishment imposed only if each of these elements has been proved beyond a reasonable doubt.'
" Turner, 812 F.2d at 1563. The Turner court also stated, quoting Gordon v. United States, 438 F.2d 858, 868 n. 30 (5th Cir. 1971) :
" ' "The test is whether the evidence is sufficient to justify the trial judge, as trier of the facts, in concluding beyond a reasonable doubt that the defendant was guilty, and that such evidence is inconsistent with any reasonable hypothesis of his innocence. Such is the substantial evidence test.' "
" Turner, 812 F.2d at 1563."
Ex parte Ferguson, 819 So.2d at 629.
First, the former husband points out that the September 2014 divorce judgment required that he remove the former wife's name "as a joint user" from the accounts related to the specified debts, not that he refinance the specified debts or place them in his sole name. Thus, he contends, he could not be found in either civil or criminal contempt for failing to do something that the September 2014 divorce judgment did not require. Indeed, the provision in question states: "Accordingly, the [specified] debts ... shall be assumed and payable by the [former] husband, who shall indemnify and hold harmless the [former] wife from liability on same and shall remove her name as a joint user." As the former husband contends, the language used in the September 2014 divorce judgment does not require the former husband to refinance the specified debts in his sole name. See Barnes v. Barnes, 28 So.3d 800, 802 (Ala. Civ. App. 2009) (explaining that a provision requiring a spouse to assume a mortgage debt and to hold the other spouse harmless from any further liability on that mortgage debt did not require the spouse to refinance the mortgage and that a trial court's order compelling the spouse to do so was an impermissible modification of a property settlement). Thus, we agree with the former husband that he could not *239 be held in either criminal or civil contempt for failing to refinance the specified debts in his sole name. Accordingly, insofar as the contempt judgment held the former husband in contempt for failing to refinance the specified debts into his sole name and ordered that the former husband refinance the specified debts into his sole name as a condition of purger, the contempt judgment is reversed, and the cause is remanded for the trial court to remove that provision as a condition of purger.
However, we are not convinced that the trial court lacked the authority to otherwise hold the former husband in contempt. The former husband admitted that he had not removed the former wife as a joint user of the accounts related to the specified debts. He testified that he had attempted to do so on more than one occasion and that neither Wells Fargo nor Bank of America would do as he requested. However, as noted above, he produced no documentary evidence of any such request or any such refusal. In fact, in his postjudgment motion, the former husband admitted that he had not produced evidence demonstrating that he had attempted to fulfill his obligation to remove the former wife as joint user on the accounts related to the specified debts, stating: "If required to submit to an additional evidentiary hearing, the [former husband] will produce evidence of his efforts and the responses from the subject banks." The trial court, in which is reposed the ability to consider the veracity of the witnesses before it, was not required to believe that the former husband had attempted to have the former wife's name removed from the accounts related to the specified debts. See Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala. Civ. App. 1999) (explaining that the ore tenus presumption in favor of a trial court's factual findings "is based in part on the trial court's unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor"). Thus, we cannot agree with the former husband that the evidence presented at the contempt trial does not support a conclusion that the former wife had proved beyond a reasonable doubt[4] that he was admittedly in contempt of the provision requiring him to remove the former wife's name as a joint user on the accounts related to the specified debts. Insofar as the finding of contempt is based on the former husband's failure to comply with that aspect of the September 2014 divorce judgment requiring that he remove the former wife's name as a joint user of the accounts related to the specified debts, the contempt judgment is affirmed.[5]
The former husband next argues, citing Null v. Null, 423 So.2d 887 (Ala. Civ. App. 1982),[6] that "a contempt citation does not apply to a debt" and contends that the trial court was limited to awarding the former wife a judgment for the amount of the "debt." Certainly, as we have recently *240 explained, Article I, § 20, of the Alabama Constitution of 1901 prohibits the imposition of a sentence of incarceration for failing to pay a debt. Ward v. Cranford, 169 So.3d 1054, 1056 (Ala. Civ. App. 2014). However, the former wife did not request that the former husband be required to pay a debt, and the contempt judgment does not order the former husband to pay a debt or to face incarceration. Instead, the contempt judgment merely sentences him to a suspended jail sentence for failing to comply with the requirement that he remove the former wife as a joint user of the accounts related to the specified debts. Thus, the former husband's argument on this point is unconvincing.
The former husband next argues that the trial court erred by ordering him to pay a portion of the former wife's attorney fees. He contends that, because, he says, he should not have been held in contempt, there is no basis for an award of attorney fees. However, because we are affirming the finding of contempt based on the former husband's failure to remove the former wife as a joint user on the accounts related to the specified debts, a contempt finding to support an award of attorney fees exists.[7] See Moody v. State ex rel. Payne, 355 So.2d 1116, 1119 (Ala. 1978) ("[I]n proper circumstances a reasonable attorney's fee may be allowed the prevailing prosecuting party in a civil contempt proceeding."). Accordingly, we affirm the contempt judgment insofar as it ordered the former husband to pay $1,500 toward the former wife's attorney fees.
Finally, the former husband argues that the trial court erred by failing to modify his child-support obligation. As noted above, the former husband agreed in January 2015 to pay $800 per month in child support. In addition, the record reflects that the grandchildren receive $540 per month in Social Security benefits as a result of their mother's death. The trial court indicated in the contempt judgment that it had failed to include the $540 that the grandchildren receive in its original determination in the divorce judgment of the former wife's income, and the trial court increased the former wife's income by that $540 in the child-support-guidelines form attached to the contempt judgment. Based on that child-support-guidelines form, the former husband's child-support obligation should be $761.12. The former husband argues that, because of the miscalculation of the former wife's income in the original child-support calculation, he will, over time, be significantly overpaying child support and that, therefore, the trial court erred by failing to modify his child-support obligation to remedy that error.
The testimony at the contempt trial established that the former husband had agreed to pay $800 per month in child support in January 2015 based on what he contends were "flawed" computations. Even at the time of the divorce trial, the former husband was not employed and was attempting to fund his lifestyle through his own business "flipping" houses, which venture was not profitable and resulted in the sale of several properties at a loss. The record further reflects that the trial court had found the former husband underemployed and had imputed income to the former husband in the September 2014 divorce judgment; the contempt judgment reiterates the trial court's conclusion that *241 the former husband is underemployed. The trial court's comments on the record make clear the trial court's belief that the former husband could secure employment to provide sufficient funds to meet his obligations while still attempting to develop and market his new business, at least until it proves successful and is producing actual income.
"Our standard of review in a case involving a modification of a child-support order is well settled. Matters related to child support, including subsequent modifications of a child-support order, rest soundly within the trial court's discretion and will not be disturbed on appeal, absent a showing that the ruling is unsupported by the evidence and thus is plainly and palpably wrong. Berryhill v. Reeves, 705 So.2d 505 (Ala. Civ. App. 1997) ; Williams v. Braddy, 689 So.2d 154 (Ala. Civ. App. 1996). A child-support award may be modified upon a showing of a material change of circumstances that is substantial and continuing. Id.; State ex rel. Shellhouse v. Bentley, 666 So.2d 517 (Ala. Civ. App. 1995)."
Jackson v. Jackson, 777 So.2d 155, 158 (Ala. Civ. App. 2000).
We are further guided by the following principles. " '[W]hen[, as here,] the judgment establishing the support obligation" is based on an agreement between the parties, the [judgment] should not be modified except for clear and sufficient reasons and after thorough consideration and investigation." ' " Chunn v. Chunn, 183 So.3d 985, 989 (Ala. Civ. App. 2015) (quoting Pendegraph v. Pendegraph, 628 So.2d 849, 850 (Ala. Civ. App. 1993), quoting in turn Tucker v. Tucker, 588 So.2d 495, 497 (Ala. Civ. App. 1991) ) (emphasis added in Chunn ). In addition, the length of time between the agreement and the request for modification is also a consideration. As we explained in Tucker, "a modification is particularly disfavored in the case of a decree based on an agreement between the parties when so short a time, here approximately fourteen months, separates the decree and the hearing for modification." 588 So.2d at 497. The period between the agreement and the request for modification in the present case is approximately 10 months.
The trial court clearly considered relevant the fact that the former husband was underemployed at the time of the entry of the September 2014 divorce judgment and that significant income had been imputed to him. The trial court concluded that the continued underemployment of the former husband was not a change in circumstances, even though perhaps he had managed some profit from his previous venture, which he had abandoned. In light of the testimony, including the former husband's testimony that a job at a discount retailer would provide income sufficient to meet his child-support obligation, and the above-stated principles, we cannot agree that, even in light of the miscalculation of the former wife's income, the trial court erred by failing to modify the former husband's child-support obligation.
In conclusion, we affirm the contempt judgment insofar as that judgment determined that the former husband was in contempt for failing to remove the former wife's name as a joint user from the accounts related to the specified debts, ordered the former husband to pay $1,500 toward the former wife's attorney fees, and denied the former husband's request for a modification of his child-support obligation. However, because the divorce judgment did not require the former husband to refinance the specified debts in his sole name, the trial court's determination that the former husband was in contempt for failing to do so is reversed. The cause is *242 remanded to the trial court for that court to enter an order reforming the conditions of purger to delete the requirement that the former husband refinance the specified debts.
The former husband requests in the conclusion of his brief that this court "order the trial court to award [the former husband an] attorney[ ] fee ... for the expenses he paid in defending and appealing the[ ] contempt [claim asserted by the former wife]." The former husband's request is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
Pittman, Moore, and Donaldson, JJ., concur.
Thompson, P.J., concurs in the result, without writing.

As will be discussed infra, the trial court indicated that it had corrected its earlier error in the divorce judgment by including in the income of the former wife the $540 per month in Social Security death benefits the children received as a result of their mother's death. See, generally, Dinkel v. Dinkel, 598 So.2d 918 (Ala. Civ. App. 1991) (indicating that Social Security disability benefits received by children should be included in the income of the custodial parent); and Cannon v. Cannon, 585 So.2d 82 (Ala. Civ. App. 1991) (indicating that Social Security death benefits received by children should be included in the income of the custodial parent).

The former husband does not question the trial court's authority to hold him in both civil and criminal contempt. Indeed, "[t]here is no legal prohibition against the finding of both criminal and civil contempt in an appropriate factual setting." Norland v. Tanner, 563 So.2d 1055, 1058 (Ala. Civ. App. 1990). We note, however, that we have construed a similar dual contempt finding as being in the nature of civil contempt because, "although it had characteristics of both criminal and civil contempt," the finding of contempt "clearly sought compliance with the [divorce judgment]" and "allowed the [former husband] control of [his] incarceration." Parker v. Parker, 640 So.2d 979, 981 (Ala. Civ. App. 1994).

The burden of proof for civil contempt has not been addressed in recent caselaw. However, it appears that a finding of civil contempt must be supported by clear and convincing evidence. See Jordan v. Wilson, 851 F.2d 1290, 1292 (11th Cir. 1988) (stating that "proof of the defendant's contempt [must be] clear and convincing"); and United States v. Rizzo, 539 F.2d 458, 465 (5th Cir. 1976) ("In a civil contempt action the proof of the defendant's contempt must be 'clear and convincing,' a higher standard than the 'preponderance of the evidence' standard, common in civil cases, although not so high as 'beyond a reasonable doubt.' "); see also Ex parte Hacker, 250 Ala. 64, 70, 33 So.2d 324, 330 (1947) (Brown, J., dissenting) (explaining, in an appeal involving contempt of an injunction, that a "complaining party [has] the burden of sustaining [contempt] allegations by clear and convincing evidence").

Because the evidence was sufficient to support the conclusion that the former wife had met the beyond-a-reasonable-doubt burden of proof, the evidence was necessarily sufficient to meet any lesser burden of proof.

We note that the former husband does not separately challenge the sentence imposed for his contempt, and we will not address that sentence in this opinion. However, in light of our reversal, in part, of the contempt finding, the trial court is authorized upon remand to reevaluate the sentence imposed when it reforms the purger condition in compliance with this opinion.

The former husband fails to mention that Null was implicitly overruled by Patterson v. Patterson, 518 So.2d 739 (Ala. Civ. App. 1987), as recognized by this court in Ward v. Cranford, 169 So.3d 1054, 1056 (Ala. Civ. App. 2014).

We note that a trial court may not award an attorney fee based on a finding of criminal contempt. See Ex parte Collins, 860 So.2d 1259, 1260 (Ala. 2003). An award of attorney fees in a case containing both a civil and a criminal contempt finding is not in error. Norland, 563 So.2d at 1058.